UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **CHRISTOPHER COSTA *et al.*,**<br>    Plaintiffs,<br><br>v.<br><br>**POOR HOUSE BRANCH MARINA LLC,**<br>    Defendant. | Case No. 1:23-cv-976-CLM |

## MEMORANDUM OPINION

Christopher Costa and Kristie Powell sue Poor House Branch Marina, LLC for breach of contract. (Doc. 14). Poor House countersues for breach, specific performance, bad faith, and fraud. (Doc. 7). Plaintiffs and Poor House both ask the court to grant them summary judgment. (Docs. 16, 17). Because the court finds that a reasonable jury could find for either party, the court **DENIES** both motions for summary judgment.

## BACKGROUND

In short, Christopher Costa and Kristie Powell bought a pontoon boat from Poor House. They paid much of the purchase price and received the boat, which they say didn't meet the agreed-on conditions. So Costa and Powell made a "punch list" of offending items. The parties agreed that the Plaintiffs would withhold the rest of their payments until Poor House fixed the punch-list items. Plaintiffs argue, and Poor House denies, that the parties then agreed to rescind the sales agreement. Now, the full story.

### I.   Undisputed Facts from Purchase to Punch List

The parties mostly agree on what happened before Powell created the punch list. Plaintiffs went to a boat show in Birmingham, Alabama where Poor House sold them an Avalon pontoon boat for $114,240.00.

1

Plaintiffs paid $100,000 before delivery. After several delays, Poor House delivered the boat to Plaintiffs' lake house. The boat engine began to smoke when Plaintiffs—accompanied by Poor House owner Dina Chappell—started the boat for a test drive. The smoke came from someone other than Plaintiffs pumping too much oil into the boat's gas tank.

After siphoning out the excessive oil, the test drive resumed with Costa at the wheel. Upon return to Plaintiffs' lake house about an hour later, the boat struck the dock damaging its bottom. Yet the parties weren't deterred from sealing the deal. Plaintiffs and Chappell proceeded to discuss last steps to finalize the sales agreement. During this discussion, Ms. Powell wrote out a punch list of outstanding items Poor House needed to add or replace on the boat:



Poor House agreed. The parties decided that Plaintiffs would not pay the remaining $14,240 until Poor House completed the list. At the end of delivery day, all parties seemed to be on the same page.

2

## II. Disputed Facts from Punch List to Present

Here's where the parties begin to diverge. Plaintiffs claim that a few days after creating the punch list, the parties agreed to rescind the sales agreement altogether. Poor House disputes the rescission. Both Plaintiffs and Poor House produce persuasive evidence to support their side.

### A. Plaintiffs' Evidence Establishing a Rescission Contract

According to Plaintiffs, several days after the boat's delivery the parties created a separate contract rescinding the original sales agreement. To support their claim of the formation, and breach, of a rescission contract, Plaintiffs point to

- This text message Powell sent Chappell on June 20, 2023:

  > Bottom line is it was a brutal experience with the wait, the unknown of when it would come and still not 100% with proper seats ordered. Didn't have proper legal items needed for test drive. (Float, cushion, vest, copies of paperwork). Then delivery was not 100% scheduled, scramble for insurance on a Saturday as it would not be wise to pay without having use of boat. Then oil circus, borrowing pumps, etc. Then Jeremy saying "I'm sorry I should have told you" with regard to electric throttle being different. Just hard to believe the boat sat there that long and no one followed up on captains chair. Meanwhile I have boat that is delivered not 100%, damaged and my sister whom purchased at same boat show has had a perfect experience. Not a good consumer experience on our end. It turned what should be a really great experience, memory & purchase into a very scary added saga of now boat needs repaired. Should have never happened that way! Entire new bucket of stress and issues as to where to even begin to start for

3

> repairs. We can't even get seats, propellor and floor right. Too big of purchase to be like this. And my sisters was a walk in the park. Boat is supposed to help be an escape from day to day stress and not add to it all

- A call between Powell and Mark Semino (an Avalon representative) later the dame day where Mr. Semino offered for Poor House to pick up the boat and issue a refund,
- Powell's acceptance to return the boat in exchange for the $100,000 Plaintiffs' already paid,
- Plaintiffs' agreement not to use the boat before Poor House picked it up,
- Text messages Chappell sent Mr. Costa on June 21, 2023 indicating that she planned to pick up the boat and refund Plaintiffs' money:

> Chappell: Hello it's dina I will be heading your way and be at house before lunch to pick up boat . . . I will have all of your cash as was giving to me

> Chappell: Costa I will be at the house by lunch to pick up the boat I will need you to sign some papers on refund

- And text messages between the parties and Semino on June 21, 2023, regarding the status of the Plaintiffs' check paid towards the purchase price:

> Powell: Costa's check already cleared. Checking my bank.
> Chappell: I will need a letter from bank stating funds are cleared
> . . .
> Powell: My check cleared via Metro bank proceed 7:48 am on 6/20 they are making copy front and back

4

> . . .
> Semino: Been deposited Tuesday morning
> …
> Chappell: Finds have not cleared. Stop payments should be placed in both check. That date and time is when it was deposited into my acct upon opening the bank on Tuesday morning
> Costa: We have to run to Jasper in morning we will be home at 12:00
> …
> Chappell: based on advice the funds are not received back in my account in order to refund due to this I will be cancelling pick up tomorrow

**B.     Poor House's Evidence Refuting a rescission Contract**

Poor House denies that the parties' minds met on rescission. To show lack of formation, and by extension a lack of breach, Poor House points to:

- Mr. Costa's deposition testimony admitting Plaintiffs recovered on an insurance claim for boat damage,
- Plaintiff and Chappell's undisputed agreement that Poor House rectify the punch-list items,
- Powell's deposition stating that Plaintiffs operated the boat after its delivery,
- A June 21, 2023 text message Chappell sent to Plaintiffs explaining that because she couldn't confirm the checks cleared, she wouldn't pick up the boat:

> Chappell: based on advice the funds are not received back in my account in order to refund due to this I will be cancelling pick up tomorrow

5

- Costa's acknowledgment during deposition why Chappell would want the checks to clear before agreeing to rescind the sales contract,

  > Q: As a businessman you understand that Ms. Chappell wanted to confirm before she refunded your money that the money was actually in her account?
  > A: Yes, sir.
  > Q: Was it your appreciation that that's why she was asking for proof that the funds had cleared?
  > A: Yes

- Plaintiffs admitting in deposition to missing materials terms from the alleged rescission contract:

  > Q: And, there had been no discussion, again, with regard to how to deal with damage to the boat?
  > Costa: No, sir.
  > …
  > Q: Were—in the course of discussion in return of the boat, were there ever any discussions regarding how to handle the damage that was caused in the collision?
  > Powell: Not to my recollection.

Based on this evidence, Poor House says that the original sales agreement was not rescinded, and it stands ready to enforce the original contract as modified by the punch list.

## STANDARD OF REVIEW

In considering cross-motions for summary judgment, the court views the facts "in the light most favorable to the non-moving party on each motion." *See Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of

material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## JURISDICTION

Before getting to the merits, without argument, Poor House asks the court to dismiss for lack of subject matter jurisdiction. (Doc. 16, p. 1). Having reviewed the evidence, the court finds that it has diversity jurisdiction. The parties are completely diverse—Plaintiffs are citizens of California and Dina Chappell, Poor House's sole member, is an Alabama citizen—and the matter in controversy exceeds $75,000. (Doc. 14, p. 1, ¶ 1–2); (doc. 16-4, p. 3–4). So the case is properly before this court, who must now decide whether to grant either party summary judgment.

## DISCUSSION

Both motions hinge on the existence of a rescission contract. Under Alabama law, "[i]t is well settled that parties to a written contract may by mutual consent and without other consideration rescind their contract. Whether the parties rescinded their contract poses a question of fact to be determined from their intent as clearly manifested in their words, acts, or conduct." *L.B. Whitfield, III LLC v. Whitfield*, 150 So.3d 171, 188 (Ala. 2014) (internal citations omitted).

Having reviewed the evidence, the court finds that a reasonable juror could go either way on whether Plaintiffs and Poor House "clearly manifested in their words, acts, or conduct" an intent to rescind Plaintiffs' agreement to buy the pontoon boat. Viewing the evidence discussed above in the light most favorable to Plaintiffs, a jury could find that the parties agreed for Plaintiffs to return the boat to Poor House in exchange for a refund. But viewing the evidence in a light most favorable to Poor House, a jury could find that the parties never agreed to rescind the original sales contract as modified by the agreed upon punch list.

Because there is a genuine fact dispute over the existence of a rescission contract, and that fact is material to Plaintiffs' claim and Poor

7

House's counterclaim, the court must **DENY** both parties' motions for summary judgment and set this case for trial.

## CONCLUSION

For these reasons, the court must **DENIES** both parties' request for summary judgment. The court will enter a separate order setting this case for trial.

**DONE** and **ORDERED** on February 12, 2025.

_____
**COREY L. MAZE**